**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

     v.

GENARO ALVARADO-MARTINEZ, also
known as Ismael Serratos,
    *Defendant-Appellant.*

No. 07-50492

D.C. No.
CR-07-00084-SGL

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
November 18, 2008—Pasadena, California

Memorandum Filed December 22, 2008
Order Withdrawing Memorandum Filed February 5, 2009
Per Curiam Opinion Filed February 5, 2009

Before: Myron H. Bright,* Stephen S. Trott, and
Michael Daly Hawkins, Circuit Judges.

Per Curiam Opinion

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

**COUNSEL**

James H. Locklin, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Antoine F. Raphael, Assistant United States Attorney, Riverside, California, for the plaintiff-appellee.

**OPINION**

PER CURIAM:

Appellant Genaro Alvarado-Martinez challenges his sentence, arguing that the district court improperly relied on a

California Law Enforcement Telecommunications System ("CLETS") database report ("rap sheet") in calculating his criminal-history score. Because the district court did not abuse its discretion by concluding that Alvarado-Martinez's rap sheet was sufficiently reliable and because the district court did not clearly err in finding that Alvarado-Martinez suffered four prior misdemeanors, we affirm.

## FACTS AND PROCEDURAL HISTORY

In June 2007, Alvarado-Martinez pleaded guilty to illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326(a), (b)(2). A modified presentence-investigation report ("PIR") recommended that the district court assign Alvarado-Martinez eighteen criminal-history points, which would place him in Criminal History Category VI under the United States Sentencing Guidelines. Eight of these criminal-history points were for four prior misdemeanor convictions that are disputed on appeal. The probation office included these convictions based on a "rap sheet" that it obtained from the CLETS.

Alvarado-Martinez objected to the PIR's assignment of eight criminal-history points, which were based on the misdemeanor convictions. Alvarado-Martinez also offered an affidavit, which indicated that, with the exception of the docket sheets, the district-court files in each of those cases had been destroyed. Alvarado-Martinez argued that because the files were unavailable, he should not be assessed criminal-history points on those convictions because the docket sheets in those cases, which had not been destroyed, do not contain information to establish a connection to him. Notably, although Alvarado-Martinez's rap sheet includes the case numbers of the four misdemeanor convictions, the docket sheets that correspond with the case numbers identify the defendant as "Ismael Serratos."

At sentencing, the district court compared the information on each docket sheet with the information on Alvarado-

Martinez's rap sheet and ruled that the government had met its burden, because there was enough consistency in numbers and details in the docket sheets to convince the court by a preponderance of the evidence that the four convictions were suffered by Alvarado-Martinez. Accordingly, the district court sentenced Alvarado-Martinez to fifty-one months' imprisonment based on the full eighteen criminal-history points. Alvarado-Martinez appealed.

## DISCUSSION

Alvarado-Martinez argues that the district court improperly assessed him eight criminal-history points based on four misdemeanor convictions because the government failed to prove that he suffered those convictions. In *United States v. Marin-Cuevas*, this Court set out the analytical framework to resolve such an argument.[1] 147 F.3d 889, 894 (9th Cir. 1998). A district court must first address whether the evidence, here a rap sheet, was sufficiently reliable even to be considered at sentencing. *See id.* If so, the question is whether that evidence, along with any other record evidence, is sufficient to sustain the assignment of criminal-history points. *See id.* We review each question in turn.

## I.

**[1]** Turning to the first question, due process requires that a defendant be sentenced on the basis of accurate information. *See Roberts v. United States*, 445 U.S. 552, 556 (1980). Thus, a district court may consider any relevant information, "provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also United States v. Sustaita*, 1 F.3d 950, 952 (9th Cir. 1993).

---

[1]This case raises the question unaddressed by *Marin-Cuevas*, namely, whether a district court abuses its discretion by concluding that a fingerprint-matched rap sheet, in the absence of contrary evidence, is sufficiently reliable for assigning criminal-history points.

We review a district court's evaluation of the reliability of evidence used at sentencing for an abuse of discretion. *See United States v. Alvarado-Guizar*, 361 F.3d 597, 599-600 (9th Cir. 2004).

**[2]** We conclude that the district court did not abuse its discretion by determining that Alvarado-Martinez's rap sheet was sufficiently reliable to be used in calculating his criminal-history score.[2] It is undisputed that the rap sheet at issue here was compiled on the basis of fingerprint matching. Thus, the fact that Alvarado-Martinez's rap sheet refers to convictions in the name of Ismael Serratos or the fact that minor inconsistencies appear on it is of no moment, because the rap sheet is reliable as a result of the fingerprint matching.[3] Such a procedure provides "sufficient indicia of reliability to support [the] probable accuracy" of the convictions listed therein. § 6A1.3(a).

Our conclusion is consistent with this Court's case law and persuasive authority. For example, in *Marin-Cuevas*, this Court held that a PIR was reliable because "the probation officer who prepared [the PIR] obtained his information from a reliable source[,] the computerized criminal history[,] and had no reason to prevaricate." 147 F.3d at 895. Thus, *Marin-Cuevas* concluded, if implicitly, that rap sheets produced by a computerized criminal history are reliable. Other unpublished decisions are consistent with this conclusion. *See, e.g.*, *United States v. Franco-Delgado*, 224 F.App'x. 722, 724 (9th

---

[2]We limit our holding to the circumstances presented here, namely the existence of a fingerprint-matched rap sheet and the absence of other evidence that would undermine the rap sheet's reliability. We express no opinion on the reliability of a rap sheet that is, for example, not compiled on the basis of fingerprint matching or is otherwise undermined by contradictory evidence.

[3]And, in any event, the rap sheet lists Ismael Serratos as an alias for Alvarado-Martinez. Other than the alias issue, Alvarado-Martinez conceded at oral argument that the record contains no other direct evidence that undermines the accuracy of his rap sheet.

Cir. 2007) (relying in part on a "fingerprint-matched rap sheet" to prove a prior conviction for purposes of calculating a defendant's criminal-history score); *United States v. Currie*, 974 F.2d 1343 (Table), 1992 WL 209538, at *2 (9th Cir. 1992) (relying, in part, on a rap sheet at sentencing). We also note that our sister circuits are consistent with our approach. *See, e.g.*, *United States v. Rodriguez-Arreola*, 313 F.3d 1064, 1068 (8th Cir. 2002) (relying in part on rap sheet at sentencing); *United States v. Shinault*, 147 F.3d 1266, 1278 (10th Cir. 1998) (same); *United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991) (same).

## II.

The next question is whether the record contains sufficient evidence to show that Alvarado-Martinez suffered the four misdemeanor convictions. The government bears the burden to show, by a preponderance of the evidence, that a defendant suffered each of the convictions used to assign points in calculating his criminal-history score. *See United States v. Romero-Rendon*, 220 F.3d 1159, 1160 (9th Cir. 2000). We review a district court's sentencing findings for clear error. *See United States v. Mix*, 457 F.3d 906, 911 (9th Cir. 2006).

The district court found that the rap sheet established by a preponderance of the evidence that Alvarado-Martinez had suffered the four misdemeanor convictions. On appeal, Alvarado-Martinez argues that a rap sheet does not satisfy the preponderance-of-the-evidence standard required for assessing criminal-history points. We disagree.

**[3]** As an initial matter, Alvarado-Martinez cites no binding authority for that proposition. But more importantly, this Court has held that a presentence-investigation report, which relied on the defendant's rap sheet, was sufficient to satisfy the preponderance-of-the-evidence standard. *See Marin-Cuevas*, 147 F.3d at 895. If a PIR, which relied on a rap sheet, was sufficient evidence to sustain the district court's decision

to assign criminal-history points, then a rap sheet is sufficient to establish Alvarado-Martinez's misdemeanor convictions by a preponderance of the evidence, absent contrary evidence.

**[4]** Alvarado-Martinez argues that *Marin-Cuevas* is distinguishable because he disputed the fact of the misdemeanor convictions. But this claim mischaracterizes the record. In a sentencing memorandum, Alvarado-Martinez stated only that "the government cannot meet its burden of proof that the alleged convictions relate to [him], and no criminal history points should be assigned for these convictions." And at his sentencing hearing, he challenged only the propriety of the government's use of the rap sheet. As in *Marin-Cuevas*, Alvarado-Martinez "never denied he was convicted of those misdemeanors. He has argued only that the government failed to provide sufficient evidence." *Id.* Because the record here contains sufficient evidence, namely the fingerprint-matched CLETS rap sheet, that Alvarado-Martinez suffered the four misdemeanors, the district court did not clearly err.

## CONCLUSION

Accordingly, we **AFFIRM**.